ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 APR -1 AM 11: 26
CLERK_____
SO. DIST. OF GA.

| | |
|---|---|
| JOHNNY RAY OGLE, | ) |
| Plaintiff, | ) |
| v. | ) CV 307-073 |
| RALPH KEMP, Warden, Wheeler Correctional Facility, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Wheeler Correctional Facility in Alamo, Georgia, filed the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because Plaintiff's complaint was filed IFP, it must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) *(per curiam)*, but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

### I. BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Ralph Kemp, Warden, Wheeler Correctional Facility

("WCF"); (2) Robert Rozier, Deputy Warden, WCF; (3) Charolette Aldrich, Mailroom Supervisor, WCF; and (4) Melissa Labigang, Mailroom Clerk, WCF. (Doc. no 1, pp. 1, 4, 8 & 9). Plaintiff submits that Defendants have violated his First Amendment, due process, and equal protection rights. (Id. at 6).

Plaintiff alleges that, on April 30, 2007, he was called to the WCF mailroom and informed that a book had been sent to him directly from the "Publisher/Vender." (Id. at 9). Plaintiff contends that Defendants Labigang and Aldrich informed him that "the book was being rejected" because it was, *inter alia*, not purchased with funds from his inmate prison account. (Id. at 9-10). According to Plaintiff, Defendants Labigang and Aldrich stated, in the "Mail Items Rejection Form," that "Gift Publications" are prohibited.[1] (See id. at 10). Plaintiff concludes, "Any such policy which prohibits [G]ift [P]ublications because [he] did not purchase it with funds from his prison account violates [his] constitutional rights to freedom of the press and his rights to due process."[2] (Id.).

Plaintiff further alleges, "A great number of inmates receive [Gift Publications]." (Doc. no. 1, Attach., p. 2). In this regard, Plaintiff contends that he receives magazine

---

[1] Plaintiff also alleges that Defendants Labigang and Aldrich stated, in the "Mail Items Rejection Form," that the book did not come from an "approved vender." (See doc. no. 1, pp. 11 & 14). According to Plaintiff, however, there is no known list of approved vendors, the vendor that sent him the book was not notified of its status, the vendor that sent him the book is, *inter alia*, "permitted to do business and ship to a prisoner," and any publication sent to WCF is screened for security purposes. (Id. at 11).

[2] According to Plaintiff, the ban on "Gift Publications" violates the Department of Corrections's Standard Operating Procedure ("SOP") and the Corrections Corporation of America's Corporate and Facility Policy ("CCA Policy"), "which state[] an inmate may receive books and publications as long as [they] come[] from a publisher or vendor." (Doc. no. 1, p. 10).

2

subscriptions, which were purchased by a non-inmate. (Id.). Although Plaintiff maintains that other inmates have filed grievances related to the ban on Gift Publications (id., Attach., p. 1), Plaintiff concludes, "The ban [on Gift Publications] is selective and only enforced on books and only for certain inmates, such as [Plaintiff]." (Id., Attach., p. 2).

Plaintiff alleges that he also appealed and filed grievances related to the rejection of the book. (Doc. no. 1, pp. 10-11). Plaintiff contends that, although Defendant Rozier denied his appeal to the rejection of the book because "[Plaintiff] needed to verify payment," the "Publication Rejection Form" indicates that the book was in fact purchased by a non-inmate. (Id. at 10). Plaintiff contends that he then filed an informal grievance, which was denied by his counselor. (Id. at 10 & 18). Plaintiff maintains that, on May 15, 2007, he filed a formal grievance, which was denied by Defendant Kemp. (Id. at 10). Plaintiff explains that, on May 29, 2007, he appealed the denial of his formal grievance, but that "[t]hroughout the appeal processes the Defendants assert[ed] [G]ift [P]ublications are prohibited pursuant to 'CCA [P]olicy,'" which requires prisoners to sign a release of funds for books, magazines, and newspapers. (Id.). Plaintiff complains that, although he cited federal case law in his appeals and grievances, "[D]efendants chose to ignore such and give a standard blanket denial." (Id. at 11).

Finally, Plaintiff submits, "[D]efendants prohibit [him] from receiving 'Internet [G]enerated [M]aterial.'[3] The sole reason of such a denial of said material is because it was generated from the Internet." (Id., Attach., p. 1). According to Plaintiff, "[D]efendants state

---

[3]According to Plaintiff, "[Defendant] Kemp is responsible for the implementation, oversight, and adherence to the practices and policies at WCF." (Doc. no. 1, p. 8). Plaintiff also maintains that Defendant Aldrich initiates the denial of "Internet Mail." (Id. at 9).

that [Defendant] Kemp posted a memo banning Internet [G]enerated [M]aterial unless it comes from a legal source." (Id.). Plaintiff contends that "[his] mother often visits such websites as the Georgia General Assembly, Lexis, [and] Westlaw," that his mother prints cases and statutes, and that he is prohibited from receiving such material. (Id.). Plaintiff concludes, "To ban material simply because it was generated and disseminated over the Internet is a violation of [his] constitutional rights." (Id.).

As relief, Plaintiff requests that the Court grant a permanent injunction prohibiting the ban on "Gift Publications" and the requirement that he must purchase publications with money from his prison account. (Doc. no. 1, p. 13). Plaintiff also asks that the Court grant a permanent injunction prohibiting the ban on "Internet Generated Mail" that passes security screening. (Id.). Finally, Plaintiff seeks compensation for all litigation costs associated with this action and damages "to deter such [future] violations . . . ." (Id.).

## II. SCREENING OF COMPLAINT

### A. Due Process Claims

Plaintiff's claims concerning alleged violations of SOP and CCA Policy, as well as the handling of his appeal and grievances, fail to state a claim upon which relief may be granted. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an

4

inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff alleges that the ban on "Gift Publications" violates SOP and CCA Policy. (Doc. no. 1, pp. 10-11). Plaintiff also contends that Defendants ignored his grievances and appeals, issuing "a standard blanket denial." (Id. at 11). However, alleged misdeeds regarding prison policies or grievance procedure do not give rise to stand-alone claims under § 1983. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances.... [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Similarly, "§ 1983 merely provides

a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the *Constitution and laws*' *of the United States*," and thus, alleged violations of SOP or CCA Policy are not actionable under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (emphasis added). Therefore, Plaintiff's claims concerning SOP and CCA Policy, as well as the handling of his appeal and grievances, fail to state a claim upon which relief may be granted. As this is the only claim against Defendant Rozier (see doc. no. 1, p. 8), he should be **DISMISSED** from the case.

B.   **Equal Protection Claim**

Plaintiff's claim concerning the selective enforcement of the ban on "Gift Publications" also fails to state a claim upon which relief may be granted. To state a viable equal protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*). Constitutionally impermissible bases to discriminate include "race, religion, national origin, poverty, or some other . . . protected interest." Damiano v. Florida Parole and Probation Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986) (*per curiam*) (citing Cruz v. Skelton, 543 F.2d 86 (5th Cir. 1976) and Osborne v. Folmar, 735 F.2d 1316 (11th Cir. 1984)).

In this case, Plaintiff complains that the ban on "Gift Publications" is selective and only enforced on "books and only for certain inmates, such as [Plaintiff]." (Doc. no. 1, Attach., p. 2). However, Plaintiff does not allege that the ban on "Gift Publications" is motivated by the desire to discriminate based on some constitutionally impermissible motive.

6

Furthermore, Plaintiff has not alleged that he was treated differently from other "similarly situated" inmates incarcerated at WCF. Indeed, Plaintiff indicates that he receives magazines purchased by non-inmates and that other inmates have also been subjected to the ban on "Gift Publications." (Id., Attach., pp. 1 & 2). Therefore, Plaintiff's claim concerning the selective enforcement of the ban on "Gift Publications" also fails to state a claim upon which relief may be granted.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's due process and equal protection claims be **DISMISSED**, and that Defendant Rozier be **DISMISSED** from this case.[4]

SO REPORTED and RECOMMENDED on this _10th_ day of April, 2008, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Kemp, Aldrich, and Labigang based on Plaintiff's First Amendment claims.